UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

_____

In re:

CLARENCE M. OTWORTH,

        Debtor.

Case No: BG 15-01586
Chapter 13

_____/

**OPINION GRANTING MOTION TO DISMISS
DEBTOR'S OBJECTION TO CLAIM**

Appearances:

Clarence M. Otworth, Twin Lake, Michigan, pro se Debtor.

Robert J. Shefferly, Esq., Farmington Hills, Michigan, attorney for Fifth Third Mortgage
Company.

I.        INTRODUCTION AND ISSUE PRESENTED.

Clarence M. Otworth (the "Debtor") filed a petition for relief under chapter 13 of the

Bankruptcy Code on March 19, 2015. Fifth Third Mortgage Company ("Fifth Third") holds

a first priority security interest in the Debtor's residence, which is located in Twin Lake,

Michigan. On April 15, 2015, Fifth Third filed a proof of claim in the Debtor's chapter 13

case, $16,071.87 of which was for prepetition arrearages owed under the note and

mortgage. A portion of this arrearage was incurred after Fifth Third established a tax

escrow on the mortgage because the Debtor stopped making payments to two local

taxing authorities, the Village of Lakewood Club and Dalton Township.

The Debtor filed a "Motion for Mandatory Injunction" and numerous other pleadings

(referred to collectively herein as the "Debtor's Objection to Claim"), objecting to Fifth

Third's claim to the extent it represents an attempt to collect the tax liabilities. The Debtor

asserts that Fifth Third's imposition of the tax escrow constitutes "collection of an unlawful debt" because the local taxing authorities, the Village of Lakewood Club and Dalton Township, "are unincorporated criminal enterprises masquerading as legitimate government municipalities."  (Debtor's Response to Motion to Dismiss, Dkt. No. 126 at 1,3.)

Because the Debtor does not dispute that the tax escrow was properly imposed under the terms of Fifth Third's mortgage, and because his arguments regarding the alleged flaws in the incorporation of the local taxing authorities have been conclusively rejected in prior litigation, the court shall grant Fifth Third's dispositive motion and shall overrule the Debtor's Objection to Claim.

## II.   JURISDICTION.

The court has jurisdiction over this chapter 13 bankruptcy case under 28 U.S.C. § 1334.  In this district, all proceedings and contested matters have been referred to this bankruptcy court for determination.  L. Civ. R. 83.2 (W.D. Mich.).  This contested matter is a core proceeding.  28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate), (B) (allowance or disallowance of claims against the estate) and (O) (other proceedings affecting the liquidation of the estate or adjustment of the debtor-creditor relationship).   This court is constitutionally authorized to enter a final order in this contested matter.  See In re Borin, 461 B.R. 719, 720 (Bankr. W.D. Mich. 2011) ("An objection to claim is clearly a 'core' proceeding within the meaning of 28 U.S.C. § 157(b)(2)(B), and the Supreme Court's recent decision in Stern v. Marshall, __ U.S. __,

131 S. Ct. 2594, 180 L.Ed.2d 475 (2011), does not undermine [a bankruptcy court's] authority to enter a final order.").

### III.    FACTS.

In January 2007, the Debtor obtained a loan from Fifth Third Mortgage – MI, LLC. In exchange for the loan, the Debtor granted Fifth Third Mortgage – MI, LLC a mortgage on property located at 187 E. Daniels Road, Twin Lake, Michigan.  The mortgage was properly recorded with the Muskegon County Register of Deeds on January 12, 2007. (Fifth Third's Motion to Dismiss Debtor's Objection to Claim, Dkt. No. 122, Exh. A.)  On December 16, 2014, the mortgage was assigned to Fifth Third Mortgage Company.  The assignment was also properly recorded with the Register of Deeds.  (Id., Exh. B.)

The Debtor's mortgage agreement with Fifth Third originally permitted the Debtor to pay "Escrow Items" such as tax assessments directly to the taxing authorities.[1] However, the mortgage further provided that:

> If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

(Dkt. No. 122, Exh. A at ¶ 3.)

---

[1]    Section 3 of the mortgage states that payments for escrow items are to be made directly to Fifth Third, unless that right is waived in writing.  The written waiver is not part of the record in this contested matter, but Fifth Third has asserted that this was originally a "non-escrow" loan.

According to the Debtor's pleadings, he discovered at some point that the local taxing authorities, the Village of Lakewood Club and Dalton Township, were "compulsorily incorporated" or not incorporated, respectively.[2]   (Debtor's Motion for Mandatory Injunction, Dkt. No. 19 at ¶¶ 7 and 8).  The Debtor asserts that "[u]nincorporated villages and townships are prohibited by Michigan law" from "levying and collecting property taxes." (Id. at ¶ 6.)  By continuing to collect taxes while "pretending to be incorporated," the Debtor argues that the Village of Lakewood Club and Dalton Township are "criminal enterprises that repeatedly commit criminal acts of fraud, extortion, and perjury."  (Id.) Based on these allegations, the Debtor stopped making property tax payments to the Village of Lakewood Club and Dalton Township.  (Id. at ¶¶ 7-8.)  When this occurred, Fifth Third imposed a tax escrow under the mortgage.  The Debtor has admitted that this tax escrow was "lawfully established . . . under the terms of the debtor's mortgage."  (Debtor's Witness List & List of Exhibits, Dkt. No. 119, "Stipulation" at 4.)

Notwithstanding Fifth Third's undisputed right to establish the tax escrow, the Debtor argues that by collecting taxes from the Debtor under the escrow, and paying those amounts to Dalton Township and the Village of Lakewood Club, Fifth Third is "collecting an unlawful debt."  (Id. at ¶¶ 9-10.)  Based on this belief, the Debtor "stopped paying his mortgage" to Fifth Third.  (Id. at ¶ 11.)

---

[2]   The relationship between the Village of Lakewood Club and Dalton Township is not entirely clear from the record before the court.  The complaint filed by the Debtor in his prior lawsuit before the United States District Court for the Western District of Michigan states that land owners in Lakewood Club are forced to pay a summer and winter property tax to Dalton Township and a summer property tax to the Village of Lakewood Club.  (See Case No. 1:13-CV-129, Dkt. No. 1 at ¶ 118.)  The court need not determine the validity of this assertion.  For purposes of this opinion, the court has assumed that both Dalton Township and Lakewood Club are municipalities that assess taxes against the Debtor's property.

These beliefs also caused the Debtor to file a lawsuit against local officials from the Village of Lakewood Club and Dalton Township, as well as various Fifth Third employees, in the United States District Court for the Western District of Michigan.[3]  The Debtor's complaint, which was filed in the district court on February 6, 2013, asserted claims for fraud, breach of fiduciary duty and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO").  Specifically, the Debtor alleged that "the Village of Lakewood Club was falsely incorporated in 1967 and [had] been illegally assessing taxes on his property ever since" and that by "collecting mortgage payments from him . . . Fifth Third Bank [had] been complicit in this illicit collection scheme."  (See Otworth v. Budnik, Case No. 14-1139, at 1 (6th Cir. Nov. 21, 2014) (unpublished opinion) (Dkt. No. 122, Exh. C).)  The district court dismissed the Debtor's complaint for failure to state a claim upon which relief may be granted, and the Sixth Circuit Court of Appeals affirmed the dismissal.  (Id.)

In its written opinion affirming the district court, the Sixth Circuit discussed the Debtor's failure to establish a "predicate offense" for "collection of an unlawful debt" under RICO.  The court explained that:

> [R]egardless of any alleged irregularities in Lakewood Club's initial incorporation, Otworth cannot now challenge its existence, because the community's residents and the State of Michigan have acquiesced in its existence for decades. *See, e.g.*, *Stuart v. Sch. Dist. No. 1 of Vill. of Kalamazoo*, 30 Mich. 69, 72-73 (1874) (describing doctrine of acquiescence and noting that "[i]f every municipality must be subject to be called into court at any time to defend its original organization and its franchises at the will of any dissatisfied citizen who may feel disposed to question them, . . . it may very justly be said that few of our municipalities can be entirely certain

---

[3]     The Debtor's complaint included eight named and one hundred unnamed defendants. Among the named defendants were Wanda Budnik, who is identified as an assessor for Dalton Township, Lisa Swanson, who is identified as the treasurer for the Village of Lakewood Club, and six individuals identified as employees of Fifth Third. (See Case No. 1:13-CV-129, Dkt. No. 1 at ¶ 6-14.)

of the ground they stand upon, and that any single person, however honestly inclined, if disposed to be litigious, or over technical and precise, may have it in his power in many cases to cause infinite trouble, embarrassment, and mischief."). Otworth has never rebutted these points.

(Id. at 5.) The court also concluded that the Debtor had failed to establish that any of the defendants knowingly made a false representation for purposes of his fraud claims, and that he had failed to show that any of the defendants owed him a fiduciary duty that had been breached. (Id. at 6-7.) The Debtor attempted to appeal these conclusions to the United States Supreme Court, but his writ of certiorari was denied on April 27, 2015. (Dkt. No. 122, Exh. D.)

While this litigation was pending, and as a result of the Debtor's defaults under the terms of the mortgage, Fifth Third initiated foreclosure proceedings. The Debtor filed his chapter 13 petition on March 19, 2015, one day before the foreclosure sale was scheduled to occur. (Dkt. No. 122 at 1.)

On April 15, 2015, Fifth Third filed a secured claim for approximately $60,000 owed under the note and mortgage. Of the total claim, $16,071.87 was for prepetition arrearages. The Debtor filed his Motion for Mandatory Injunction on April 16, 2015, objecting to Fifth Third's claim to the extent the prepetition arrearages included amounts attributable to the tax escrow.[4] (Dkt. No. 19.) The Debtor continues to assert that those amounts constitute "collection of an unlawful debt" due to the alleged defects in the initial incorporations of the Village of Lakewood Club and Dalton Township. (Id.)

---

[4]     The exact amount of the arrearage that arose from the tax escrow is unclear from the record. A pleading filed by Debtor acknowledges that he owes Fifth Third thirty (30) delinquent mortgage payments of $433.43, or a total arrearage for $13,002.90. (See Dkt. No. 119, Proposed Order at ¶ 1.) The difference between this amount and the amount claimed by Fifth Third suggests that approximately $3,000 of Fifth Third's claim relates to the tax escrow and is subject to the Debtor's objection.

Fifth Third filed a response to the Debtor's Motion for Mandatory Injunction on April 27, 2015. (Dkt. No. 25.) Thereafter, the court held four status conferences on the Debtor's motion.[5] Counsel for Fifth Third appeared at each status conference. The Debtor also filed numerous other pleadings relating to his Motion for Mandatory Injunction, and requesting an evidentiary hearing thereon.[6] Status conferences were held on many of these motions, and Fifth Third filed at least one additional response to the relief requested by the Debtor in those supplemental motions.[7] (Dkt. No. 109.)

The court ultimately entered an Order Scheduling Evidentiary Hearing on Debtor's Objection to Claim, which established a deadline for the filing of dispositive motions and set an evidentiary hearing date. (Dkt. No. 115.) Both the Debtor and Fifth Third filed dispositive motions: the Debtor's Motion for Summary Judgment was filed on August 14, 2015 (Dkt. No. 120) and Fifth Third's Motion to Dismiss Debtor's Objection to Claim was filed on August 18, 2015 (Dkt. No. 122).[8] Responses were filed by the parties, and the

---

[5]     The status conferences were held on May 27, 2015 (Dkt. No. 39), June 16, 2015 (Dkt. No. 84), July 8, 2015 (Dkt. No. 104), and July 29, 2015.

[6]     These motions included a Motion for Evidentiary Hearing on Fifth Third Bank's Fraudulent Proof of Claim (Dkt. No. 91), two other motions for evidentiary hearings (Dkt. Nos. 81 & 83) and a Motion for Due Diligence (Dkt. No. 67) and a Motion for Judicial Notice (Dkt. No. 108.). To the extent these motions requested an evidentiary hearing on the issue of whether Fifth Third's claim constitutes collection of an unlawful debt, the motions were partially granted by entry of the court's Order Scheduling Evidentiary Hearing on Debtor's Objection to Claim. (See Dkt. No. 115.) To the extent the motions requested any other relief, they were consolidated with the Motion for Mandatory Injunction pursuant to the scheduling order and are subject to this opinion.

[7]     As previously noted, the court and the parties have generally referred to the Motion for Mandatory Injunction and the supplemental motions as the "Debtor's Objection to Claim."

[8]     After the scheduling order was issued, the Debtor filed numerous documents with the court in addition to his motion for summary judgment. Those documents included a: Witness List and List of Exhibits (Dkt. No. 119); Motion for Judicial Notice (Dkt. No. 127); Request for Admissions (Dkt. No. 128); Request for Production of Documents (Dkt. No. 130); Interrogatories (Dkt. No. 131); Admissions of Clarence M. Otworth and Request for Hearing (Dkt. No. 141); Motion to

court scheduled a hearing on both dispositive motions for September 9, 2015.  (Dkt. Nos. 123, 124, 126, 129.)

Less than a week prior to the scheduled hearing, the Debtor filed a "Notice to Parties in Interest of Debtor's Change of Applicable Information."  (Dkt. No. 132.)  The notice indicated that the Debtor was withdrawing his motion for summary judgment and would "not attend the Court's hastily decided hearing because there is no longer a reason to hold a hearing."  (Id.)  Notwithstanding the withdrawal of the Debtor's motion, the hearing on Fifth Third's motion to dismiss was held as scheduled on September 9, 2015. The Debtor did not appear.  After hearing argument from counsel for Fifth Third, which included an oral motion for costs and attorney fees incurred in defending its claim,[9] the court took the matter under advisement.  The court also issued an order holding the deadlines established in its prior scheduling order in abeyance pending issuance of this opinion on Fifth Third's dispositive motion.  (Dkt. No. 134.)

On September 18, 2015, five months after the original Motion for Mandatory Injunction was filed and while the matter was under advisement pending decision by the court, the Debtor filed a "Response to Order Holding Deadlines in Abeyance."  (Dkt. No. 138.)  In the response, the Debtor purported to unilaterally withdraw his "Motion for Mandatory Injunction," "Motion for an Evidentiary Hearing" and "Motion for Hearing on proof of claim."  (Id.) Questioning the Debtor's ability to unilaterally withdraw his Objection

---

Reschedule Evidentiary Hearing (Dkt. No. 145); and Learned Counsel's Demands for Costs and Attorney Fees are Illegal (Dkt. No. 146).

[9]      Fifth Third's brief in support of its motion to dismiss also includes a general request for costs and attorney fees.  (Dkt. No. 122 at 8.)

to Claim at the late stage of these proceedings,[10] the court scheduled a hearing on the purported withdrawal.  That hearing was rendered moot just three days later, when the Debtor filed a document entitled "Declaration of Debtor."   (Dkt. No. 140.)   In this declaration, filed with the court on September 21, 2015, the Debtor stated that he was "withdraw[ing] his withdrawal" of his Motion for Mandatory Injunction and related pleadings.  (Id.)

Notwithstanding the Debtor's objection to Fifth Third's claim, and the more than twenty pleadings filed by the Debtor in connection with his objection, the Debtor was successful in confirming his chapter 13 plan.  (See Order Confirming Chapter 13 Plan, Dkt. No. 118.)   The plan provides for on-going monthly payments to Fifth Third and for the curing of the prepetition arrearage owed under the mortgage.  (Id.; Chapter 13 Plan, Dkt. No. 14.)

## IV.     DISCUSSION.

### A.   _Summary Judgment Standard._

Fifth Third's dispositive motion, although styled as a Motion to Dismiss Debtor's Objection to Claim under Bankruptcy Rule 7012(b)(6), asserts that there are no genuine

---

[10]      The filing of the Debtor's motions, which the court has construed as an objection to Fifth Third's claim, initiated a contested matter under the Bankruptcy Rules.  See In re Fairchild, 969 F.2d 866, 868 (10th Cir. 1992) (the filing of an objection to a proof of claim initiates a contested matter) (citing Fed. R. Bankr. P. 3007, Advisory Committee Note) (additional citations omitted). Under Bankruptcy Rule 7041(a)(2), which is made applicable to contested matters by Rule 9014(c), after a responsive pleading or motion for summary judgment is filed, an action may be dismissed at the request of the plaintiff or moving party "only by court order, on terms that the court considers proper."  Although the court need not decide this issue in light of the Debtor's subsequent pleadings, the court notes that application of this rule would likely have precluded the Debtor from "unilaterally withdrawing his objection" (i.e., his Motion for Mandatory Injunction and supplemental pleadings) without permission from this bankruptcy court.  In re Fairchild, 969 F.2d at 868.

issues of material fact in this contested matter and that the Debtor's objection to its claim should be overruled as a matter of law.  At the hearing on its motion, counsel for Fifth Third requested that the motion be treated as one for summary judgment.  The court agrees that this is the better characterization of the relief requested.  See, e.g., In re Gasel Transp. Lines, Inc., 326 B.R. 683, 693 (6th Cir. B.A.P. 2005) (Gregg, J., concurring) (A "court is not bound by how a party labels its motion;" instead, the relief sought, or to be granted, should be determined by the substance of the request); Whitaker v. Bank of America (In re Whitaker), 2013 WL 2467932, at *7 (Bankr. E.D. Tenn. June 7, 2013) (unpublished opinion) (suggesting that, absent a court order, Rule 12(b)(6) does not generally apply in contested matters).  The court also finds that the Debtor has had more than ample opportunity to respond to Fifth Third's motion and present arguments and evidence in opposition to the motion.  See Max Arnold & Sons, LLC v. W.L. Hailey & Co., 452 F.3d 494, 503-04 (6th Cir. 2006) (court may treat motion for judgment on the pleadings as motion for summary judgment so long as the parties "had a sufficient opportunity to present pertinent materials").  Accordingly, the court has construed Fifth Third's motion as a request for summary judgment.

Federal Rule of Civil Procedure 56(a), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7056, governs motions for summary judgment.  Under these rules, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

In deciding a motion for summary judgment, the court is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue

for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2511 (1986). All facts and related inferences are to be viewed in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255, 106 S. Ct. at 2513. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986) (citation omitted).

    B.   *The Merits of the Debtor's Objection to Fifth Third's Claim*.

Under § 502(a) of the Bankruptcy Code, a proof of claim is deemed allowed, unless a party in interest objects. 11 U.S.C. § 502(a). Upon the filing of an objection, § 502(b) provides that the claim shall be allowed, except to the extent certain enumerated exceptions apply. See generally Travelers Cas. & Sur. Co. of America v. Pacific Gas & Elec. Co., 549 U.S. 443, 449, 127 S. Ct. 1199, 1204 (2007). The first of those exceptions to allowance occurs when the claim "is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1). The Debtor asserts that the portion of Fifth Third's claim that relates to amounts due under the tax escrow should be disallowed because inclusion of these amounts represents "collection of unlawful debts." Therefore, the court has analyzed the Debtor's objection to Fifth Third's claim under § 502(b)(1).

"During the claims allowance process, the burden of proof shifts between the parties." In re Hughes, 313 B.R. 205, 208 (Bankr. E.D. Mich. 2004). Fifth Third's timely-filed and properly executed proof of claim is prima facie evidence of the claim's validity and amount. Fed. R. Bankr. P. 3001(f). As the party objecting to the claim, the Debtor

bears the burden of coming forward with evidence to overcome the claim's prima facie validity.  In re Hughes, 313 B.R. at 208 (citing In re Dow Corning Corp., 250 B.R. 298, 321 (Bankr. E.D. Mich. 2000)) (additional citations omitted).  If the Debtor "produces evidence to refute at least one of the allegations essential to the claim's legal sufficiency, the burden of persuasion shifts back to the claimant."  Id. (citations omitted).  Fifth Third "ultimately bears the burden of proving the validity of [its] claim by a preponderance of the evidence."  Id. at 208-09 (citations omitted).

In this case, the Debtor has not come forward with any evidence to refute the prima facie validity of Fifth Third's claim.  To the contrary, the Debtor has admitted that the tax escrow was properly imposed under the terms of the mortgage after the Debtor intentionally ceased making payments to the local taxing authorities.

The Debtor's assertion that by including amounts due under the tax escrow, Fifth Third is "collecting an unlawful debt" is based entirely on the Debtor's argument that the local taxing authorities, the Village of Lakewood Club and Dalton Township, are not properly incorporated under Michigan law.  Unfortunately for the Debtor, these arguments were raised, litigated, and conclusively rejected in prior litigation before the district court and Sixth Circuit Court of Appeals.  Relitigation of these issues in this contested matter is barred by the preclusive effect of the prior determinations.

The doctrine of res judicata "comprise[s] two doctrines concerning the preclusive effect of a prior adjudication, claim preclusion and issue preclusion."  J.Z.G. Resources, Inc. v. Shelby Ins. Co., 84 F.3d 211, 213-14 (6th Cir. 1996).  Issue preclusion, or collateral estoppel, "precludes relitigation of issues of fact or law actually litigated and decided in a prior action between the same parties and necessary to the judgment, even if decided as

part of a different claim or cause of action." Markowitz v. Campbell (In re Markowitz), 190

F.3d 455, 461 (6th Cir. 1999) (citations omitted).  Application of collateral estoppel under

federal law, requires that:

> (1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; (2) determination of the issue must have been necessary to the outcome of the prior proceeding; (3) the prior proceeding must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.

Smith v. S.E.C., 129 F.3d 356, 362 (6th Cir. 1997) (quoting Detroit Police Officers Ass'n

v. Young, 824 F.2d 512, 515 (6th Cir. 1987)); see In re John Richards Homes Bldg. Co.,

404 B.R. 220, 237 (E.D. Mich. 2009) ("A federal court applies federal law in determining

the preclusive effect of a prior federal judgment.").

In this case, all of these requirements have been met, and it is appropriate to give

preclusive effect to the findings of fact and conclusions of law in the prior federal

judgments.  This issue of the propriety of the Village of Lakewood Club's incorporation

was raised, litigated and decided by the Sixth Circuit, when it affirmed the district court's

dismissal of the Debtor's RICO claim in the prior litigation.  The Sixth Circuit held that

"regardless of any alleged irregularities in Lakewood Club's initial incorporation" the

Debtor could not now "challenge its existence" based on the doctrine of acquiescence.[11]

---

[11]   The Sixth Circuit's opinion addressed the Debtor's arguments regarding the incorporation of the Village of Lakewood Club.  It is not clear from the record if the court's ruling also applied to the Debtor's assertions about the flaws in Dalton Township's incorporation.  Even if the Sixth Circuit opinion did not specifically address Dalton Township, and is not deemed to have preclusive effect regarding those issues, the court finds that the Sixth Circuit's reasoning would apply with equal force to Dalton Township.  The parties have asserted in their pleadings that Dalton Township, like the Village of Lakewood Club, is a municipality in the State of Michigan that levies taxes on the Debtor's property.  Under the doctrine of acquiescence, the Debtor may not successfully challenge the existence of Dalton Township based on an alleged failure to incorporate or asserted flaws therein.

Otworth v. Budnik, Case No. 14-1139 at 5 (6th Cir. Nov. 21, 2014) (unpublished opinion) (Dkt. No. 122, Exh. C).  This determination was necessary to the Sixth Circuit's holding in the prior litigation and was incorporated into its final order on the merits.  Although the litigation was dismissed based on dispositive motions filed and adjudicated before any trial was necessary, the Debtor had a full and fair opportunity to litigate his claims in both the district court and on appeal.  The dismissal of the Debtor's challenges to the initial incorporation of the taxing authorities precludes relitigation of those issues in the context of the Debtor's objection to Fifth Third's claim.

The applicability of collateral estoppel to the Debtor's claims is not altered by the fact that Fifth Third, as a corporate entity, was not a named party in the prior litigation. Defensive use of collateral estoppel, such as would apply in this case, "does not require mutuality between the parties as long as the plaintiff has a full and fair opportunity to litigate the contested issue in the prior proceeding."  Tankersley v. Lynch (In re Lynch), 2014 WL 1096307 (Bankr. E.D. Mich. Mar. 7, 2014) (unpublished opinion) (citing Georgia-Pacific Consumer Prods. LP v. Four-U-Packaging, Inc., 701 F.3d 1093, 1098-99 (6th Cir. 2012) (noting that, when "a litigant brings repeated actions based upon the same operative facts, issue preclusion may still properly apply despite a change in legal theory or the 'cast of characters-defendants.'") (citations omitted).  The Debtor had a full and fair opportunity to litigate his assertions in the prior litigation.  He should not be afforded the chance to re-visit those issues in the context of his claim objection.

## V.   CONCLUSION.

For the reasons stated above, the court concludes that the Debtor has not raised a valid basis for disallowance of Fifth Third's proof of claim, or any portion thereof.  The

Debtor's Objection to Claim is therefore OVERRULED and his Motion for Mandatory Injunction, and all related requests for relief, are DENIED.  Fifth Third's secured claim is ALLOWED in the total amount of $60,447.71, which includes $16,071.87 in prepetition arrearages.  To the extent Fifth Third has requested an award of attorney fees and costs, that request is DENIED without prejudice.  If Fifth Third wishes to seek attorney fees and costs incurred in defending the Debtor's Objection to Claim, such request must be made by a separate written motion.  An order shall be entered accordingly.

**IT IS SO ORDERED.**

**Dated October 2, 2015**



James W. Boyd
United States Bankruptcy Judge